UNITED STATES of America,
Plaintiff–Appellee,

v.

Darnell GARCIA, Defendant–Appellant.

No. 91–50642.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1993.

Decided Oct. 4, 1994.

Gail Ivens, Pasadena, CA, for defendant-appellant.

Stefan D. Stein, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: HUG, SCHROEDER, and FERGUSON, Circuit Judges.

HUG, Circuit Judge:

I.

*OVERVIEW*

Darnell Garcia, a former Special Agent of the Drug Enforcement Administration

("DEA") appeals his conviction and sentence in the district court following a five-month jury trial for violating 21 U.S.C. § 846, narcotics conspiracy; 18 U.S.C. § 641, theft of government property; 21 U.S.C. § 841(a)(1), possession with intent to distribute heroin; and 18 U.S.C. §§ 1956(a)(1) and (a)(2), money laundering. His pre-guidelines sentence totaled 80 years. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## II.

### FACTS

On November 21, 1988, Garcia and fellow DEA agents John Jackson and Wayne Countryman were charged in a criminal complaint with one count of conspiracy to evade federal income taxes. On November 22, Jackson and Countryman were arrested. Garcia evaded arrest, and in January 1989, fled the United States.

While Garcia was a fugitive, federal grand juries issued two superseding indictments adding two additional defendants and additional charges for a total of 42 counts. Garcia was named in 26 of the counts. The superseding indictments charged the defendants with a wide-ranging conspiracy to steal drugs and money from the DEA, possession and distribution of narcotics, and multiple tax and currency reporting violations.

■ Garcia was arrested on July 3, 1989, at a travel agency in the Grand Duchy of Luxembourg. On February 15, 1990, pursuant to an extradition treaty, the Luxembourg Minister of Justice issued a decree ordering Garcia's extradition to the United States on 6 of the 26 counts alleged against Garcia in the third superseding indictment.[1]

On February 26, 1990, Garcia made his first appearance in the United States District Court for the Central District of California, Judge Terry J. Hatter, Jr., presiding. He was arraigned on the six-count indictment and charged with: count 1, conspiracy to possess with intent to distribute cocaine and heroin and use of communication facilities to facilitate the commission of drug offenses in violation of 21 U.S.C. §§ 841(a)(1), 843(b), and 846; count 2, theft of one kilogram of heroin, which was government property, in violation of 18 U.S.C. § 641; count 3, possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a); counts 4 and 5, transferring proceeds of narcotics trafficking in violation of 18 U.S.C. §§ 1956(a)(2) and 1956(a)(1); and count 6, giving notice of an intended government search and seizure in violation of 18 U.S.C. § 2232.

On November 15, 1990, Garcia's jury trial commenced. The trial lasted five months. Approximately 90 witnesses testified, including former codefendants Jackson and Countryman who, pursuant to a plea agreement, testified against Garcia. Garcia argued at trial that he was being prosecuted in retaliation for filing a successful discrimination suit against the DEA, and that all monies discovered in his Swiss bank account were not acquired through narcotics trafficking, but through jewelry smuggling and "under karating," offenses not charged in the indictment ·and not extraditable under the treaty with Luxembourg. The jury did not believe Garcia's story. He was convicted on Counts 1 through 5.[2]

On July 22, 1991, Garcia was sentenced consecutively on all 5 counts to a pre-guidelines sentence of 80 years, and a fine of $1,160,000.

## III.

### THE ISSUES ON APPEAL

Garcia makes five arguments on appeal: (a) that it was error to refuse to give a jury instruction on how to weigh evidence of commingled funds in connection with the money laundering charges, (b) that it was error to refuse a requested instruction on the Government's alleged failure to collect and preserve

---

**1.** The 20 other charges brought against Garcia are not considered crimes in Luxembourg. Thus, under the doctrine of dual criminality, Garcia could not be extradited or tried on those 20 charges. *See United States v. Van Cauwenberghe*, 827 F.2d 424, 428 (9th Cir.1987), *cert.*

*denied*, 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988).

**2.** Count 6 was dismissed pursuant to the district court's granting of Garcia's Fed.R.Crim.P. 29 motion.

potentially exculpatory evidence, (c) that it was error to allow the Government to present Garcia's foreign bank records as evidence, (d) that it was error to correct the sentence pursuant to Fed.R.Crim.P. 35, and (e) that it was error to sentence him under the conspiracy conviction to 15 years because the jury rendered a general verdict.

## A. The Commingling of Funds Instruction

■ Garcia contends that the district court erred when it refused to instruct the jury on how to evaluate proceeds from a commingled bank account under the money laundering charges. We disagree.

Garcia was charged in Counts 4 and 5 with money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and (a)(2)(B)(i). The indictment stated that he had transferred $420,000 from his Swiss bank account to his account in Santa Monica and that the transferred money was proceeds from illegal narcotics transactions. The statute states in pertinent part:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity

(2) Whoever transports, transmits, or transfers, or attempts to transport, transmit or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States—

(B) knowing that the monetary instrument or funds involved in the transportation, transmission, or transfer represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, or transfer is designed in whole or in part—(i) to conceal or disguise

the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity....

shall be sentenced to a fine ... or imprisonment for not more than twenty years, or both.

18 U.S.C. § 1956 (1992 Supp.)

The undisputed evidence at trial revealed that on May 21, 1987, Garcia transferred $420,000 from a Swiss bank account to the Santa Monica Bank, and then on May 28, 1987, used that money towards the purchase of a $581,600 home in Palos Verdes, California. Prior to the wire transfer, the Swiss account contained approximately $1,700,000.

The Government contended that the $420,000 were proceeds from Garcia's narcotics trafficking. The Government presented evidence that approximately $1,483,165 of the funds in the Swiss account were receipts from the sale of stolen drugs. The evidence was supported by the testimony of coconspirators Countryman and Jackson, who testified regarding 13 separate thefts of drugs and monies from DEA vaults and from DEA-targeted narcotics traffickers that they and Garcia participated in over a six-year period. The Government produced evidence that Garcia attempted to conceal the source of the funds to purchase the house by creating fictitious loan documents purporting to show that the funds were borrowed from an Italian citizen named DiUbaldo instead of coming from his Swiss bank account. Mr. DiUbaldo testified that he never loaned Garcia any money.

Garcia's defense to the money laundering charges was that the money in the Swiss account was not proceeds from drug trafficking, but rather, it was the proceeds of jewelry smuggling, a crime with which he was not charged. Garcia presented a detailed account of several trips to Italy where he would pick up hundreds of kilograms of gold jewelry for a company named Oro Aurora and smuggle it into the United States. Garcia's expert testified that from 1983 to 1987 Garcia would have received approximately $2,000,000 from his jewelry smuggling. Based on this testimony, Garcia claimed that all of the

money in the Swiss account was derived from jewelry smuggling, not narcotics trafficking.

Both parties submitted proposed jury instructions regarding how to evaluate the proceeds from the Swiss bank account that had been transferred to the Santa Monica Bank. The district court refused to give an instruction on commingling of the funds, ruling that it was an issue of fact for the jury to decide whether Garcia's withdrawal of $420,000 represented the proceeds of drug trafficking in violation of section 1956.

"We review the district court's determination whether there was a factual basis for giving an instruction for an abuse of discretion and review related issues of law *de novo.*" *United States v. Taren–Palma,* 997 F.2d 525, 530 (9th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1648, 128 L.Ed.2d 368 (1994). Garcia's contention is a factual issue. Thus, we review for abuse of discretion.

Garcia claims that the district court misstated the elements of the money laundering offenses because it failed to instruct the jury that the Government had the burden to prove that the money had been specifically derived from drug trafficking. We have held that "[s]o long as the [jury] instructions fairly and adequately cover the issues presented, the judge's formulation of those instructions or choice of language is a matter of discretion." *United States v. Lopez,* 885 F.2d 1428, 1434 (9th Cir.1989), *cert. denied,* 493 U.S. 1032, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990) (citation omitted). Thus, as long as the instructions fairly presented the elements of the money laundering statute, there was no error.

The court's jury instructions for Counts 4 and 5 were:

### Count 4

[T]he government must prove each of the following elements beyond a reasonable doubt:

First, the defendant caused money to be transported from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States.

Second, the defendant knew that the money represented the proceeds of the felonious buying, selling or dealing of narcotic or other dangerous drugs.

Third, the defendant knew the transportation was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of drug proceeds.

### Count 5

[T]he government must prove each of the following elements beyond a reasonable doubt:

First, the defendant conducted a financial transaction involving property that represented the proceeds of the felonious buying, selling or dealing of narcotic or other dangerous drugs.

Second, the defendant knew that the property represented the proceeds of the felonious buying, selling or dealing of narcotic or other dangerous drugs.

Third, the defendant knew the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of drug proceeds.

These instructions adequately establish the elements of the offenses and that the Government had the burden to prove that the $420,000 at issue had been derived from drug trafficking. Garcia, however, contends that the Government had to meet a higher standard by proving that all the money used in the transaction came specifically from drug proceeds, not from untainted funds commingled in the Swiss bank account.

This circuit has yet to address the "proceeds" requirement of section 1956 or the money laundering statutes. Other circuits have addressed the issue. The Eighth Circuit does not read the statute to require that the Government trace the proceeds to a particular sale. *United States v. Blackman,* 904 F.2d 1250, 1257 (8th Cir.1990). The Tenth Circuit, in addressing the "proceeds" requirement of section 1567, a companion money laundering statute, stated:

The government had the burden of showing that the criminally derived prop-

erty used in the monetary transactions was in fact derived from specified unlawful activity. This does not mean, however, that the government had to show that funds withdrawn from the defendant's account could not possibly have come from any source other than the unlawful activity. Once proceeds of unlawful activity have been deposited in a financial institution and have been credited to an account, those funds cannot be traced to any particular transaction and cannot be distinguished from any other funds deposited in the account. The "tainted" funds may be commingled with "untainted" funds.... *[R]equiring a showing that the proceeds were in fact "derived from specified unlawful activity" could not have been intended as a requirement that the government prove that no "untainted" funds were deposited along with the unlawful proceeds. Such an interpretation would allow individuals to avoid prosecution simply by commingling legitimate funds with proceeds of crime. This would defeat the very purpose of the money-laundering statutes.*

*United States v. Johnson,* 971 F.2d 562, 570 (10th Cir.1992), (internal citation omitted) (emphasis added).

■ The Seventh Circuit has interpreted the proceeds element to require that the Government prove that the transaction "involves" the proceeds of narcotics trafficking, and that "involves" means something less than all. *United States v. Jackson,* 983 F.2d 757, 765 (7th Cir.1993). The Seventh Circuit has further held that a jury instruction stating that all the proceeds must be derived from drug activity is not required because section "(a)(1)(B)(i) allow[s] *for convictions where the funds involved in the transaction are derived only in part* from 'specified unlawful activities.'" *Id.* at 768 (citing *United States v. Jackson,* 935 F.2d 832, 840 (7th Cir.1991)). The Seventh Circuit has observed, and we agree, that Congress, in drafting the money laundering statutes, did not intend for defendants to be able to avoid the sanction of the statute by commingling funds. *Jackson,* 935 F.2d at 840.

Garcia urges the adoption of a rule that would identify whether tainted and untainted funds were withdrawn on a "drugs in—first out," a "drugs in—last out," or an averaging basis. He relies on forfeiture law and case law developed under 18 U.S.C. § 2314. These cases are inapposite.

■ We conclude that under the money laundering statutes, due to the fungibility of money, it is sufficient to prove that the funds in question came from an account in which tainted proceeds were commingled with other funds. As the Tenth Circuit noted, to rule otherwise would defeat the very purpose of the money laundering statutes. It is unnecessary to attempt to segregate in some manner the tainted funds from the commingled account. Although a special instruction on the effect of commingling could have been given, it was unnecessary. The instructions, as given, were adequate. Thus, whether there were tainted funds in a commingled account is the issue of fact for the jury to decide. No special commingling instruction is necessary as long as the elements of the money laundering offense and the burdens of proof are properly instructed.

In this case, the Government presented evidence that nearly all the money in Garcia's Swiss bank account was derived from narcotics transactions. Garcia presented evidence that the money in his Swiss account came from jewelry smuggling, not narcotics transactions. The source of funds in that account was an issue of fact for the jury to decide, based on the witnesses' testimony and credibility. "It is the jury's duty to weigh the evidence and determine what version of the facts to believe." *United States v. Toomey,* 764 F.2d 678, 681 (9th Cir.1985), *cert. denied,* 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986).

The district court properly instructed the jury on the elements of section 1956 and on how to weigh the evidence. The district court did not abuse its discretion when it refused to instruct the jury on how to proportion the proceeds between tainted and untainted funds. The presence of some tainted funds in the commingled account is sufficient to taint the $420,000 wired from his

Swiss account to Santa Monica to buy the house.

### B. *Instruction on Failure to Preserve Evidence*

Garcia claims that it was error to refuse to give an instruction concerning his contention that the Government failed to preserve and collect evidence regarding his participation in gold jewelry smuggling. He contends that this constituted a failure to instruct on his theory of defense. Garcia's proposed jury instruction stated:

> You have heard evidence that the government failed to collect potentially exculpatory evidence concerning the nature and extent of the gold smuggling activities of Piero Saltarelli and Darnell Garcia. If you find that the government, or agents of the government then conducting the investigation, failed to collect this evidence in bad faith or because one or more of the agents harbored animosity towards Darnell Garcia, then you may infer that the evidence not collected by the government was likely to support Mr. Garcia's defense.

▮▮▮ It is a well-founded proposition in this circuit that a defendant is entitled to have a judge "instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir.1990). However, the proposed instruction did not set forth a theory of defense. It did not provide the requisites of a legal defense to the offense charged. *See United States v. Yarbrough,* 852 F.2d 1522, 1541 (9th Cir.), *cert. denied,* 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). Rather, the proposed instruction relates only to a permissible inference that may be drawn if certain facts are found to be true.

▮▮▮ Garcia contends that the Government acted in bad faith because it failed to collect the business records from his alleged business partner, Piero Saltarelli. A failure to collect potentially exculpatory evidence can constitute a violation of the due process clause only if bad faith is shown. *Miller v. Vasquez,* 868 F.2d 1116, 1119–20 (9th Cir. 1989), *cert. denied,* 499 U.S. 963, 111 S.Ct. 1591, 113 L.Ed.2d 654 (1991). *See also Ari-*

*zona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 337–38, 102 L.Ed.2d 281 (1988). Garcia contends that the court erred because it did not allow him to present the full details of his successful discrimination suit against the DEA; and thus, to show the DEA's bias and bad faith in failing to collect the allegedly exculpatory evidence. The discrimination suit had marginal, if any, relevance to the bad faith contention. The court did permit testimony regarding the discrimination suit, but did not allow the specific details. This limitation was not an abuse of discretion.

There is no evidence that the Government intentionally neglected to obtain evidence concerning Garcia's involvement with Saltarelli. The Government travelled to Italy several times to interview Saltarelli. Both parties deposed Saltarelli. The Government attempted numerous times to obtain the records from the gold business. There was no evidence of bad faith justifying the defendant's proposed instruction; and thus, the district court did not err when it refused to submit the instruction to the jury.

### C. *The Swiss Bank Records*

Garcia contends that the district court should have applied the doctrine of judicial estoppel to preclude the Government from using his Swiss bank records as evidence in support of the money laundering offenses. These records were obtained through the United States–Switzerland Mutual Assistance in Criminal Matters Treaty ("Treaty"). Garcia concedes that under the Treaty a defendant has no standing to challenge an erroneous use of Swiss banking records. He argues, however, that estoppel should apply because the Government took inconsistent positions in the district court regarding the use to be made of the records. The district judge, to whom all representations by the Government were made, found this not to be the case.

▮▮▮ The doctrine of judicial estoppel is invoked to preclude a party from abusing the judicial process by taking inconsistent positions in the same litigation. *Yanez v. United States,* 989 F.2d 323, 326 (9th Cir. 1993) (citation omitted). A court invokes

judicial estoppel at its discretion. *Id.* Thus, we review for an abuse of discretion.

■■■ There are two varying views in the circuit courts regarding judicial estoppel. This circuit has not, as yet, adopted either the majority or minority view of judicial estoppel. *Id.*

■■■ We recently reiterated the two views of judicial estoppel as follows:

Under the majority view, judicial estoppel does not apply unless the assertion inconsistent with the claim made in the subsequent litigation "was adopted in some manner by the court in the prior litigation." Under the minority view, judicial estoppel can apply even when a party was unsuccessful in asserting its position in the prior judicial proceeding, "if the court determines that the alleged offending party engaged in 'fast and loose' behavior which undermined the integrity of the court."

*Britton v. Co-op Banking Group,* 4 F.3d 742, 744 (9th Cir.1993) (quoting *In re Corey,* 892 F.2d 829, 836 (9th Cir.1989)). We hold that under either the majority or the minority view judicial estoppel does not apply to this case.

Prior to the indictment, the Government made a request to the Swiss government to provide bank records for the criminal investigation of the defendant and others. The formal Request for Assistance under the Treaty requested the records to show "deposits and withdrawals from Swiss accounts" by persons who were suspected of, among other things, "trafficking in cocaine and heroin" and "laundering the proceeds of drug trafficking through Switzerland and elsewhere." The Request for Assistance also referenced the particular $420,000 transfer to purchase a home in California. Garcia filed a motion for an order directing the Government to withdraw its Request for Assistance. In the motion, Garcia did not contend that the Government's use of the records would be improper to prove money laundering charges, but he argued that under the Treaty, the use would be improper to prove income tax and currency reporting violations.

In interpreting the Swiss response to the Request for Assistance in these preliminary proceedings, Richard Owens, then the Associate Director for the Office of International Affairs of the Department of Justice, stated that the Swiss records:

may not be used by the United States government for any matter "concerning violations with respect to taxes, customs duties, ... or exchange control regulations...." Treaty, Article 2(1)(c)(5). This does not preclude such use in a prosecution involving the financing of drug trafficking.

Garcia relies on Owens' statement and asserts that at trial the bank records were used to show the transfer of funds to purchase a house, not to demonstrate evidence of financing from drug trafficking. He contends that the proof was inconsistent with Owens' interpretation; thus, judicial estoppel should be invoked to prevent the Government from relying on the Swiss account records.

The records were not used with respect to taxes, customs duties, or exchange control regulations, which is consistent with Owens' representation. His statement that this did not preclude their use in prosecution involving the financing of drug trafficking was not a representation that they would not be used to prove money laundering charges. Furthermore, the "financing of drug trafficking" can reasonably be interpreted as including the necessity to launder the funds. The district court stated that Garcia's argument was "somewhat semantic" and found that judicial estoppel was not appropriate. We conclude that this was not an abuse of discretion.

### D. *The Correction of the Sentence*

■■■ Garcia contends that the district court erred when, pursuant to Fed.R.Crim.P. 35(a), it changed the applicable parole eligibility statute from 18 U.S.C. § 4205(a) to § 4205(b)(1). We agree.

■■■ The legality of a criminal sentence is reviewed *de novo. United States v. Koenig,* 813 F.2d 1044, 1046 (9th Cir.1987). Garcia was sentenced to a total of 80 years. At sentencing the judge stated, "All of these sentences of incarceration shall be pursuant to 18 United States Code Section 4205(a).

And you shall be eligible for a parole hearing after *having served one-third of the time."*

The written judgment, filed the next day, stated: "The sentences on each count shall run consecutively to each other, and the defendant shall be considered for parole pursuant to 18 U.S.C. § 4205(a)."

Section 4205(a) states:

(a) Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

18 U.S.C. § 4205(a) (1988). The district court's oral pronouncement of Garcia's sentence is inconsistent with section 4205(a). The court stated that Garcia would serve one-third of his sentence of 80 years, which would be approximately 26 years and 6 months, whereas section 4205(a) would require Garcia to serve only 10 years before he would be eligible for parole.

Based on this inconsistency, the Government filed a motion to correct an illegal sentence pursuant to Fed.R.Crim.P. 35(a). At the hearing, the judge stated that at sentencing "I made it very clear that I thought this defendant should serve one-third of the time that he had been sentenced to which was 80 years in the aggregate. . . . I meant the sentence to be pursuant to 18 United States Code Section 4205(b)(1)." Section 4205(b)(1) states that the court may:

(1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed. . . .

18 U.S.C. § 4205(b)(1) (1988). The court corrected what it considered an illegal sentence and stated, "Whether that will stand up on appeal I don't know. But clearly that was the intention of this court. I misspoke; and

pursuant to Rule 35(a), I'm making that correction now to what otherwise would be an illegal sentence." We hold that the district court erred in correcting the sentence under Rule 35, and we remand for sentencing.

Under Fed.R.Crim.P. 35(a)[3] the district court may correct a sentence if it is illegally imposed. *United States v. Stevens,* 548 F.2d 1360, 1362 (9th Cir.), *cert. denied,* 430 U.S. 975, 97 S.Ct. 1666, 52 L.Ed.2d 369 (1977). A sentence is illegal if it is so ambiguous that it fails to reveal its meaning "with fair certainty." *United States v. Alverson,* 666 F.2d 341, 348 (9th Cir.1982) (citing *United States v. Moss,* 614 F.2d 171, 175, 176 n. 4 (8th Cir.1980)). An oral sentence which leaves uncertainty as to the amount of time to be served is ambiguous but not so ambiguous as to be illegal. *See Payne v. Madigan,* 274 F.2d 702, 704–05 (9th Cir.1960), *aff'd,* 366 U.S. 761, 81 S.Ct. 1670, 6 L.Ed.2d 853 (1961). Garcia's oral sentence is ambiguous as to the time to be served before becoming eligible for parole, but it is not illegal.

Where the oral pronouncement of a defendant's sentence is unambiguous, but differs from the written sentence, the oral sentence controls. *United States v. Hicks,* 997 F.2d 594, 597 (9th Cir.1993). *See also United States v. Bergmann,* 836 F.2d 1220, 1221 (9th Cir.1988). In contrast, the written sentence will control where there are ambiguities in the oral pronouncement of the sentence, and the writing resolves the ambiguity. *Green v. United States,* 447 F.2d 987, 987 (9th Cir.1971), *cert. denied,* 405 U.S. 976, 92 S.Ct. 1201, 31 L.Ed.2d 250 (1972).

Here, the oral pronouncement is ambiguous regarding whether Garcia's parole eligibility date will be determined under 18 U.S.C. § 4205(b)(1) or under 4205(a). The written judgment clearly states he shall be considered for parole pursuant to 18 U.S.C. § 4205(a). Thus, relying on the written judgment, Garcia's parole eligibility date is clearly and unambiguously determined under section 4205(a), and any attempt to "correct" it violates Garcia's double jeopardy rights.

---

**3.** The version of Rule 35(a) applicable to this pre-guideline case states:

    **(a) Correction of a Sentence.** The court may correct an illegal sentence imposed in an ille-

gal manner within the time provided herein for the reduction of sentence.

Even though the district court may have intended at all points in time to apply section 4205(b)(1), it cannot correct a sentence that was imposed to reflect this intention. *See United States v. Munoz–Dela Rosa,* 495 F.2d 253, 255 (9th Cir.1974) (citing with approval *United States v. Sacco,* 367 F.2d 368 (2d Cir.1966)). The district court's later amended judgment increased Garcia's minimum term before being eligible for parole from 10 years to 26 and 2/3 years, in violation of the double jeopardy provisions. *See United States v. Wingender,* 711 F.2d 869, 870 (9th Cir.1983).

In *Munoz–Dela Rosa,* we emphasized the right of a criminal defendant against double jeopardy, stating that the pronouncement of a sentence, even if contrary to the district judge's intent, must control:

> All acknowledge that judges are human and may misstate their intention at the time of sentencing. The instant case presents very strong evidentiary support for a holding that the district court did in fact "misspeak" himself at the time Appellant was sentenced. Yet the difficulties in formulating a principle to establish an exception to the well-established rules hereinabove stated have led us to the conclusion that the interests of justice ... require strict adherence to the axiom that an unambiguous oral pronouncement of a legal sentence must control.

495 F.2d at 256. The same holds true when the written judgment clarifies an ambiguous legal oral sentence.

The Government cites *United States v. Edmonson,* 792 F.2d 1492, 1496 (9th Cir. 1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987), as support for its contention that there is no double jeopardy prohibition against correcting an illegal sentence even if correction increases the punishment. *Edmonson* is distinguishable, however, because in that case (consolidating appeals from the decisions of two district judges) the district courts convicted the defendants of substantive crimes different from the crimes charged in the indictments. The sentences were truly illegal. In contrast, the district court in this case had authority to impose a minimum sentence under either section 4205(a) or (b)(1). Thus, the sentence under section 4205(a) (in both its oral and written form) was not "illegal" such that Rule 35(a) could be invoked. Here, regardless of the district judge's intent to apply section 4205(b)(1), Garcia's sentence under the more lenient section 4205(a) controls and should not have been "corrected."

### E. *Sentencing Under the Conspiracy Conviction*

Garcia contends he was improperly sentenced in this pre-guidelines case to 15 years under the conspiracy conviction. We agree.

Garcia was convicted under Count 1 of the indictment for conspiracy in violation of 21 U.S.C. § 846. The charge alleged five separate objects of the conspiracy. Four of the objects alleged violations of 21 U.S.C. § 841(a)(1), possession with intent to distribute and distribution of heroin and cocaine. The fifth object of the conspiracy alleged a violation of 21 U.S.C. § 843(b), using communication facilities to facilitate the commission of drug offenses.

The jury returned a general verdict of guilty on the charge. Neither party requested a special verdict form on the multi-object conspiracy. A court sentences the defendant for a section 846 conspiracy conviction based on the penalties established for the object of the conspiracy. *See* 21 U.S.C. § 846. Garcia was sentenced to 15 years. This sentence reflects the substantive narcotics violations named as objects of the conspiracy that carried a maximum 15–year sentence at the time Garcia was sentenced. *See* 21 U.S.C. § 841(a)(1). Garcia contends that the district court erred in sentencing him to 15 years because the general verdict did not state which object of the charged multi-object conspiracy he was found guilty of violating. Therefore, he contends that he should have been sentenced based on the object of the conspiracy that required the lowest period of incarceration, which is 21 U.S.C. § 843(b), using communication facilities to facilitate the commission of drug offenses. This offense carries a four-year sentence.

Generally, when a defendant challenges a conviction based on the absence

of a special verdict form, but failed to object to the jury instructions or offer a special verdict, we review for plain error. *See United States v. Vasquez–Velasco,* 15 F.3d 833, 847 (9th Cir.1994). However, when the information sought in the special verdict is relevant to the sentence to be imposed, it is the duty of the Government to seek a special verdict and we will review the sentence *de novo. See id.* at n. 11; *United States v. Orozco–Prada,* 732 F.2d 1076, 1084 (2d Cir.) *cert. denied,* 469 U.S. 845, 105 S.Ct. 154, 83 L.Ed.2d 92 (1984); *Brown v. United States,* 299 F.2d 438 (D.C.Cir.), *cert. denied,* 370 U.S. 946, 82 S.Ct. 1593, 8 L.Ed.2d 812 (1962); *but see Williams v. United States,* 238 F.2d 215, 219 (5th Cir.1956), *cert. denied,* 352 U.S. 1024, 77 S.Ct. 589, 1 L.Ed.2d 596 (1957). Because the Government sought to establish the conspiracy to violate section 841(a)(1), a crime that bore the longer sentence, it was the obligation of the Government to submit a special verdict form to substantiate the charge. Thus, we will review Garcia's sentence under the conspiracy *de novo.*

▮▮▮ An element of the crime of conspiracy under section 846 is that the conspiracy must be to commit an offense under the Drug Abuse Prevention and Control subchapter. If the jury finds no such object of the conspiracy, there is no crime. In this case, the sentencing judge was confronted with two objects of the alleged conspiracy, two different elements, which called for two very different sentences. If the conspiracy was only to violate section 843(b), it is a crime punishable by a maximum sentence of four years; however, if it was to violate section 841(a)(1), it is a crime punishable by a maximum sentence of 15 years. In the absence of a special verdict, there was no way for the sentencing judge to know which object was the necessary element to constitute the crime. Thus, the verdict does not justify a 15–year sentence. *See Orozco–Prada,* 732 F.2d at 1083–84; *Newman v. United States,* 817 F.2d 635, 637 (10th Cir.1987); *United States v. Owens,* 904 F.2d 411, 415 (8th Cir. 1990); *Brown,* 299 F.2d at 439–40; *United States v. Quicksey,* 525 F.2d 337, 341 (4th Cir.1975), *cert. denied,* 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d 97 (1976).

Garcia's jury was charged with determining whether he was guilty of conspiring to commit the narcotics charges *or* whether he was guilty of conspiring to use communication facilities to facilitate the commission of drug offenses. There was sufficient evidence presented to convict Garcia under either of the listed objects or both. But because there was no special verdict form provided, we only know that the jury found Garcia guilty of conspiring to violate section 841(a)(1), or of conspiring to violate section 843(b), or both. The sentencing court cannot speculate as to which object of the conspiracy the jury found to support the conviction. To do so would invade the province of the jury.

As we recently discussed in *United States v. Gaudin,* 28 F.3d 943 (9th Cir.1994) (en banc), it is clear that the jury must decide all facts necessary to establish each element of the crime. *Gaudin,* at 946.

What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, and must persuade the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements.

*Id.* at 946 (quoting *Sullivan v. Louisiana,* —— U.S. ——, ——–——, 113 S.Ct. 2078, 2080–81, 124 L.Ed.2d 182 (1991)). We emphasized the importance of this right in quoting Justice Scalia's concurring opinion in *Carella v. California,* 491 U.S. 263, 268, 109 S.Ct. 2419, 2422, 105 L.Ed.2d 218 (1989).

The constitutional right to a jury trial embodies "a profound judgment about the way in which law should be enforced and justice administered." It is a structural guarantee that "reflect[s] a fundamental decision about the exercise of official power—a reluctance to entrust plenary powers over the life and liberty of the citizen to one judge or to a group of judges." A defendant may assuredly insist upon observance of this guarantee even when the evidence against him is so overwhelming as to establish guilt beyond a reasonable doubt. That is why the Court has found it

constitutionally impermissible for a judge to direct a verdict for the State. *Gaudin,* at 946–47.

The Government relies on *United States v. Dennis,* 786 F.2d 1029 (11th Cir.1986), *cert. denied,* 481 U.S. 1037, 107 S.Ct. 1973, 95 L.Ed.2d 814 (1987), and *United States v. Peters,* 617 F.2d 503 (7th Cir.1980), as support for its contention that Garcia's sentence under the conspiracy can stand because he was convicted of a substantive narcotics violation which was also listed as an object of the conspiracy. This would allow the court to infer that a conviction of the substantive offense also means a conviction of conspiracy to engage in the same offense listed as an object of the conspiracy. Conviction of the substantive offense no doubt creates a strong inference that the substantive offense was an object of the conspiracy, but it is not equivalent to a *finding* by the jury of that element of the crime.[4]

 Other circuits in analogous circumstances have withheld judgment on the conspiracy count for 30 days, giving the Government the right to resentence under the charge with the lesser penalty, in lieu of a new trial. *See Brown,* 299 F.2d at 440; *Orozco–Prada,* 732 F.2d at 1084; *Quicksey,* 525 F.2d at 341; *Owens,* 904 F.2d at 414–15; *U.S. v. Pace,* 981 F.2d 1123, 1123 (10th Cir. 1992). We will do the same. If the Government consents to a resentencing under 21 U.S.C. § 843(b), we will affirm the conviction on the conspiracy count and remand for resentencing. If the Government does not consent we will vacate Garcia's sentence on Count 1 and remand for a new trial on that count.

## IV.

### CONCLUSION

Garcia's conviction is affirmed. The case is remanded for resentencing consistent with the opinion. In the event the Government does not consent to resentencing under section 843(b), the district court is instructed to vacate the sentence for Count 1 and grant a new trial on that charge.

**AFFIRMED in Part, and REMANDED.**

---

**4.** We note that the sentencing guidelines in section 1B1.2(d) (n. 5) state that when the verdict in a multi-object conspiracy does not establish which offense was the object of the conspiracy, the court is to decide the object of the conspiracy. The note specifies that the court can do so "if the court, were it sitting as a trier of fact, would convict the defendant of conspiring to commit that object offense."

The case at hand is a pre-guidelines case, but we acknowledge that the rationale of this holding casts doubt on the constitutionality of that provision of the sentencing guidelines, because that provision permits a judge rather than the jury to find the facts necessary to establish an element of the crime. The submission of a special verdict form would forestall any such issue.