[No. F022018. Fifth Dist. Sept. 11, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
ADAMSON GBADEBO-SODA, Defendant and Appellant.

[No. F023009. Fifth Dist. Sept. 11, 1995.]

In re ADAMSON GBADEBO-SODA on Habeas Corpus.

## COUNSEL

Richard J. Krech, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Kelly A. Elam, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Adamson Gbadebo-Soda appeals from the judgment entered on a jury verdict finding him guilty of burglary of Bank of America

under Penal Code[1] section 459 (count II) and grand theft of Union Bank in violation of section 487 (count V). Appellant does not appeal the jury convictions of receiving stolen property under section 496 (count I), burglary under section 459 (count III) or grand theft under section 487 (count IV). Appellant contends the evidence was insufficient to sustain the burglary conviction in count II because he lacked the intent to commit theft against the Bank of America when he attempted to withdraw $500 from an account in which he had deposited $600 in cash and $600 in stolen money orders. Appellant also contends that venue was improper and that his vicinage right was violated under count V, grand theft of Union Bank, because no deposits, withdrawals, or preparatory acts were conducted in Stanislaus County, the location of the trial. In both the appeal and in a separate writ of habeas corpus, appellant contends his trial attorney's failure to object to venue and vicinage constitute ineffective assistance of counsel. For efficiency purposes, we have consolidated the appeal and writ proceedings.

## FACTS

### A. Count II: Burglary of Bank of America

On January 13, 1994, appellant opened a savings account with Bank of America in Bakersfield by depositing $100 in cash. Appellant used a false driver's license and Social Security card under the name Jackson Tim to open the account. On January 18, 1994, appellant deposited an additional $500 in cash and two $300 Travelers Express money orders in a Bank of America branch in Stockton. The money orders deposited were stolen from a liquor store in Oakland on December 28, 1993.

On January 20, 1994, appellant entered a Modesto branch of the Bank of America. When waited upon, he attempted to withdraw $500 from the account in which the cash and money orders had been deposited. The bank's operations manager, Sherry Egger, suspected appellant's identification was false and refused to process appellant's request. Ms. Egger then dialed 911 to notify the police.

Officer David Hawn responded to Ms. Egger's call and stopped appellant in his car in the bank's parking lot. Two more officers joined Officer Hawn and searched appellant's car. The officers found various bank cards, Social Security cards, and driver's licenses with appellant's photograph under the names Adamson Gbadebo-Soda, Robert Cole, Shawn Golden, Hacket Maurice, and Jackson Tim. Appellant admitted to Officer Siville that all but the Adamson Gbadebo-Soda documents were false.

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

B. *Count V: Grand Theft From Union Bank*

On December 4, 1993, appellant opened a checking account and a money-market account at Union Bank in Visalia. Appellant opened the accounts with a $4,800 Aetna Insurance check made payable to Shawn Golden, the name under which appellant opened the accounts. Appellant subsequently conducted the following 29 deposits and withdrawals on the checking account:

| Date | Amount | Type | Location |
| --- | --- | --- | --- |
| 12/13/93 | -$100 | ATM (Automatic Teller Machine) | Visalia |
| 12/13/93 | -$300 | ATM | Oakland |
| 12/13/93 | -$300 | ATM | Oakland |
| 12/14/93 | -$1,000 | Check | Oakland |
| 12/15/93 | -$280 | ATM | Visalia |
| 1/11/94 | +$350 | Invalid Money Order | Stockton |
| 1/12/94 | +$1,100 | Invalid Money Order | Fresno |
| 1/12/94 | -$80 | ATM | Visalia |
| 1/12/94 | -$100 | ATM | Visalia |
| 1/12/94 | -$100 | ATM | Stockton |
| 1/13/94 | +$660 | Invalid Money Order | Visalia |
| 1/13/94 | -$100 | ATM | Fresno |
| 1/13/94 | -$200 | ATM | Fresno |
| 1/14/94 | +$620 | Invalid Money Order | Fresno |
| 1/14/94 | +$700 | Invalid Money Order | Fresno |
| 1/14/94 | +$700 | Invalid Money Order | Visalia |
| 1/14/94 | -$300 | ATM | Fresno |
| 1/14/94 | -$200 | Withdrawal | Visalia |
| 1/14/94 | -$500 | Withdrawal | Visalia |
| 1/18/94 | +$640 | Invalid Money Order | Stockton |
| 1/18/94 | +$650 | Invalid Money Order | Fresno |
| 1/18/94 | -$300 | ATM | Stockton |
| 1/18/94 | -$800 | Check | Stockton |
| 1/18/94 | -$300 | ATM | Stockton |
| 1/18/94 | -$300 | ATM | Stockton |
| 1/18/94 | -$500 | Check | Stockton |
| 1/18/94 | -$300 | ATM | Stockton |
| 1/19/94 | -$300 | ATM | Stockton |
| 1/19/94 | -$950 | Check | Stockton |

None of the money orders deposited in Union Bank were valid. As a result of appellant's actions, the bank lost $4,445 before discovering stop payments had been placed on the money orders.

Appellant did not conduct any bank transactions involving Union Bank in Stanislaus County; however, police found the false identification under the name Shawn Golden which appellant used to open the Union Bank account in appellant's possession in Modesto, Stanislaus County. The parties concede neither vicinage nor venue was contested at trial. However, appellant filed a declaration with his petition for a writ of habeas corpus asserting he complained to his counsel at trial that he believed jurisdiction was improper in Stanislaus County.

## DISCUSSION

1. *Sufficient evidence of appellant's intent to commit theft supported the burglary conviction on count II even though he attempted to withdraw less than the cash he deposited in an account in which he had also deposited invalid money orders.*

"Every person who enters any . . . building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary. . . ." (§ 459.) To commit burglary, the underlying felony need be neither committed nor attempted; only the *intent* to commit the felony is required. (§ 459; *People* v. *Robles* (1962) 207 Cal.App.2d 891, 894 [24 Cal.Rptr. 708], citing *People* v. *Guarino* (1955) 132 Cal.App.2d 554, 559 [282 P.2d 538].) The defendant's intent to commit the crime must exist at the time of entering the building. (*People* v. *Henderson* (1956) 138 Cal.App.2d 505, 509 [292 P.2d 267]; *People* v. *Robles, supra,* at p. 894; *People* v. *Garrow* (1955) 130 Cal.App.2d 75, 85 [278 P.2d 475].) Appellant contends insufficient evidence existed to convict him of burglary of Bank of America because he lacked the necessary intent to commit theft at the time he entered the bank, since theft entails the taking of "property of another" under section 484.[2] He points to the evidence showing that he attempted to withdraw only $500 from the account in which he had deposited $600 in cash.

The Attorney General contends the jury properly found appellant's felonious intent by examining appellant's entire scheme to defraud the bank. We agree with the Attorney General.

Neither party has cited, and we have been unable to find, any case directly considering the question here, i.e., when "good" funds and "bad" funds are commingled in a bank account, does an attempt to withdraw an amount not exceeding the "good" funds preclude a finding of intent to commit theft?

---

[2]Although the definition of burglary also includes entry with intent to commit forgery, the prosecution charged appellant only with intent to commit theft in the original information. The trial court disallowed the prosecution's later attempt to amend the information.

Appellant was not convicted of attempted theft, and it is not necessary to determine whether the attempted withdrawal was itself a crime. The crucial question is appellant's intent when he entered the bank. If there is substantial evidence that he then intended to commit theft, it does not matter whether he thereafter made *any* attempt to withdraw funds from the account. If appellant could be guilty of burglary absent an attempt to withdraw any funds, it logically follows that an attempt to withdraw some funds does not preclude conviction, again assuming substantial evidence of his intent at the time of entry. Thus, the fact appellant attempted to withdraw only $500 from an account in which he had deposited $600 in cash, while supporting a reasonable inference that he did not intend to steal money from the bank, must be viewed in the light of other evidence supporting the opposite inference.

The evidence showed that approximately 156 blank money orders were stolen from a liquor store in Oakland on December 28, 1993. Between January 11 and 19, 1994, appellant deposited or attempted to deposit 37 of the stolen money orders in 4 separate accounts he had recently opened, including the Bank of America account. The other accounts were at Bank of the West in Tulare, First Deposit National Bank,[3] and a Union Bank branch in Visalia. Appellant opened each of the accounts in a separate false name and used false identification records for that purpose.

Between January 11 and 20, 1994, appellant made or attempted over 40 separate transactions in the 4 accounts, consisting of deposits, cash withdrawals, and checks. All of the deposits included stolen money orders, and some included small amounts of cash. The transactions were conducted at numerous locations between Stockton and Bakersfield.

When he was apprehended on January 20, 1994, appellant possessed nine of the stolen money orders along with over $5,800 in cash.

The conviction of receiving stolen property (count I) was based on appellant's receipt of the money orders, and those on count III (burglary) and count IV (grand theft) were based on his transactions with Bank of the West and First Deposit National Bank, respectively.

We believe the jury could properly infer from all the evidence that when appellant entered the Bank of America branch on January 20, 1994, he intended to make one of a series of withdrawals which, when completed, would have converted to cash the two stolen money orders he had previously

---

[3]First Deposit National Bank was described as a "non-bank bank" which does not maintain physical branches. A depositor is issued a credit card which can be used to make withdrawals or purchases up to the balance of the account.

deposited in the Bank of America account. The mere fact he knowingly deposited stolen money funds in the account indicates that his ultimate aim was to shift the loss to the bank when the money orders were returned unpaid. His activity with Bank of America is consistent with that at the other banks and shows an overall illicit scheme to convert the stolen money orders into cash at the banks' expense. The intent behind the scheme is rather dramatically demonstrated by appellant's almost feverish activity over a few days during which he apparently raced from bank to bank throughout the San Joaquin Valley, making deposits and withdrawals, all the while using four different aliases supported with false identification documents.

Appellant's argument is based on the simplistic notion that the "good" funds and the "bad" funds which he deposited in the account retained their respective characteristics and that he merely intended to withdraw the "good" funds. Even if his premise were correct, we would be unpersuaded. Appellant's attempt to withdraw $500 does not necessarily indicate that he only intended to receive "good" funds instead of "bad." It makes just as much sense to say that he intended to withdraw "bad" funds on January 20 and later reclaim the "good" funds. In any event, the premise is flawed. Money credits are fungible and lose their separate identity once commingled in an account. When appellant entered the Bank of America branch on January 20, 1994, his account had a balance of $1,200, not $600 in cash and $600 in stolen money orders.

Our analysis finds some support in a line of federal money laundering cases in which defendants commingled illegal funds with legal funds and the circuit courts found all of the money in the account tainted. (*U. S.* v. *Garcia* (9th Cir. 1994) 37 F.3d 1359, 1365; *U.S.* v. *Johnson* (10th Cir. 1992) 971 F.2d 562, 570; *U.S.* v. *Jackson* (7th Cir. 1991) 935 F.2d 832, 840.) In *Garcia*, the Ninth Circuit stated: " '. . . Once proceeds of unlawful activity have been deposited in a financial institution and have been credited to an account, those funds cannot be traced to any particular transaction and cannot be distinguished from any other funds deposited in the account. The "tainted" funds may be commingled with "untainted" funds. . . . [R]*equiring a showing that the proceeds were in fact "derived from specified unlawful activity" could not have been intended as a requirement that the government prove that no "untainted" funds were deposited along with the unlawful proceeds. Such an interpretation would allow individuals to avoid prosecution simply by commingling legitimate funds with proceeds of crime. This would defeat the very purpose of the money-laundering statutes.*' " (37 F.3d at p. 1365, quoting *U.S.* v. *Johnson, supra,* at p. 570, italics in original.) *Garcia* then added: "We conclude that under the money laundering statutes, due to the fungibility of money, it is sufficient to prove that the funds in question

came from an account in which tainted proceeds were commingled with other funds. . . . It is unnecessary to attempt to segregate in some manner the tainted funds from the commingled account." (37 F.3d at p. 1365. But see *United States* v. *Poole* (5th Cir. 1977) 557 F.2d 531, 535-536 [check drawn on account in which fraudulently obtained funds commingled with legitimate funds was not a security taken by fraud].)

The *Garcia* line of cases considered whether specific conduct was legal or illegal under the applicable federal statutes, rather than whether substantial evidence of a specific intent was present. Nevertheless, the decisions hold that the presence of some tainted funds in a commingled account is sufficient to taint the whole account and thus undermine appellant's argument that his intent could not have been to commit theft.

 Intent is a question of fact, properly determined by the jury. (*People* v. *Walker* (1939) 33 Cal.App.2d 18, 19 [90 P.2d 854].) An appellate court will not reverse the jury's finding unless the evidence was insufficient as a matter of law. Because the evidence strongly demonstrated a common scheme of defrauding various banks, resulting in appellant's conviction on four other felony counts, and because the illegal and legal funds deposited in the Bank of America account were no longer separately distinguishable, we conclude there was sufficient evidence that appellant maintained the required intent to commit theft when he entered the Bank of America branch and attempted to withdraw funds.

2. *Appellant's venue and vicinage issues were not preserved for appeal, and the failure to object was not ineffective assistance of counsel per se.*

 Appellant contends the Stanislaus Superior Court lacked proper venue and vicinage over count V, theft from Union Bank, because "the prosecution failed in its burden to show that material portions of the crime were committed within Stanislaus County." Venue and vicinage are logically distinct concepts; venue refers to the location where the trial is held, while vicinage refers to the right of a criminal defendant to be tried by a jury drawn from the area in which the crime occurred. (*Hernandez* v. *Municipal Court* (1989) 49 Cal.3d 713, 716, fn. 1 [263 Cal.Rptr. 513, 781 P.2d 547]; *People* v. *Guzman* (1988) 45 Cal.3d 915, 934 [248 Cal.Rptr. 467, 755 P.2d 917].) Appellant asserts that his trial attorney's failure to assert these objections constituted ineffective assistance of counsel. We will conclude that appellant waived any venue and vicinage violations by failing to timely object at trial, and his attorney's failure to so object did not constitute ineffective assistance of counsel per se.

 "The jurisdictional power of a court to act is conceptually divided into subject matter and territorial jurisdiction." (*People* v. *Jackson* (1983)

150 Cal.App.3d Supp. 1, 6 [198 Cal.Rptr. 135].) Every California superior court has subject matter jurisdiction to conduct felony trials and to impose sentences for felonies defined by California statutes committed within the state, even though some or all of the crimes may be committed outside the county in which that court sits. (*People* v. *Remington* (1990) 217 Cal.App.3d 423, 429-430 [266 Cal.Rptr. 183].) In California, the terms venue and territorial jurisdiction merge because the basic venue statute for criminal offenses, section 777, places venue in the "jurisdictional territory" where the offense was committed. (*People* v. *Jackson, supra,* at p. Supp. 8; *People* v. *Remington, supra,* at p. 429, fn. 9.) The jurisdictional territory of a superior court is defined as "the county in which the court sits." (§ 691, subd. (c).) Territorial jurisdiction is not limited to only one county; it is proper in the county in which the offense was committed (§ 777), in any county in which any acts "constituting or requisite to the consummation of the offense" took place (§ 781), and in any county in which property taken by burglary, robbery, theft, or embezzlement has been brought. (§ 786.) Unlike subject matter jurisdiction, territorial jurisdiction is a nonfundamental aspect of jurisdiction which may be waived either by defendant's consent or by failure to object. (*People* v. *Campbell* (1991) 230 Cal.App.3d 1432, 1443 [281 Cal.Rptr. 870], citing *People* v. *Remington, supra,* at pp. 429-430.)

The right to a jury drawn from the vicinage of the crime is based on the Sixth and Fourteenth Amendments of the United States Constitution[4] and on the California Constitution. (*People* v. *Guzman, supra,* 45 Cal.3d at pp. 934-935.) In *Guzman,* our Supreme Court was faced with whether an attorney may waive the vicinage right through a motion for change of venue even over the defendant's objection. Despite the constitutional basis for the vicinage right, the Supreme Court upheld the attorney's actions and stated the vicinage right is not a personal right of the defendant because it belongs in part to the public to "vindicate[] the community's right to sit in judgment on crimes committed within its territory." (*Id.* at pp. 936-937.)

Relating the vicinage right to the notion that territorial jurisdiction is waivable and nonfundamental, *People* v. *Tamble* (1992) 5 Cal.App.4th 815, 820 [7 Cal.Rptr.2d 446], held that ". . . the constitutionally guaranteed protection of vicinage can be deemed waived by failure to timely assert it." Other cases have similarly held that failure to timely assert the vicinage right constitutes a technical waiver. (*People* v. *Price* (1991) 1 Cal.4th 324, 386 [3 Cal.Rptr.2d 106, 821 P.2d 610]; *People* v. *Sering* (1991) 232 Cal.App.3d

---

[4]The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ."

677, 686 [283 Cal.Rptr. 507]; *People* v. *Remington, supra,* 217 Cal.App.3d at p. 429; *People* v. *Jackson, supra,* 150 Cal.App.3d at p. Supp. 7; *People* v. *Powell* (1974) 40 Cal.App.3d 107, 120, fn. 5 [115 Cal.Rptr. 109].)

██ Because venue and vicinage are distinct concepts, they require separate objections at trial to preserve the issues for appeal. (*People* v. *Campbell, supra,* 230 Cal.App.3d at p. 1443.) ██ In the present case, appellant made no objection on either ground. In *Remington,* the First Appellate District found the defendant technically waived any venue or vicinage challenges by not raising the issue at trial, even though the defendant raised the issue of territorial jurisdiction during the preliminary hearing. (217 Cal.App.3d at pp. 429-431.) Quoting *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896 [150 Cal.Rptr. 910, 587 P.2d 706], the *Remington* court stated, " 'it would be wholly inappropriate to reverse a superior court's judgment for error it did not commit and that was never called to its attention.' " (*People* v. *Remington, supra,* at p. 430.) Since the appellant failed to raise any territorial jurisdiction or vicinage objections prior to this appeal, the issues are deemed waived.

Appellant asserts that because his counsel failed to raise venue or vicinage objections at trial, appellant received ineffective assistance of counsel. We disagree. In effect, appellant contends that every time venue or vicinage is arguably not met, counsel's failure to object is ineffective assistance per se. Such reasoning runs counter to the notion that venue and vicinage are nonfundamental and easily waivable rights. (See *People* v. *Guzman, supra,* 45 Cal.3d at pp. 935-936.)

The decision not to raise vicinage or venue falls within the attorney's authority to control the tactical direction of a proceeding. ██ "[I]t is well established that the power to control judicial proceedings is vested exclusively in counsel." (*Townsend* v. *Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].) " '[E]xcept where representation by counsel is so ineffective that it can be described as a "farce and a sham" . . . , an attorney may ordinarily waive his client's rights.' " (*Ibid.,* quoting *People* v. *Hill* (1967) 67 Cal.2d 105, 114 [60 Cal.Rptr. 234, 429 P.2d 586].) To establish ineffective assistance of counsel, appellant must show that appellant's representation fell below an objective standard of reasonable representation which prejudiced the defendant. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 687 [80 L.Ed.2d 674, 693, 104 S.Ct. 2052].) "Counsel's control, of course, is not unlimited, and there are certain fundamental protections guaranteed an accused which counsel may not waive without his client's concurrence," such as the right to a jury trial, the right not to incriminate oneself, and the general right to present a defense. (*Townsend,*

*supra*, at p. 781; *People* v. *Guzman, supra,* 45 Cal.3d at p. 936.) Venue and vicinage, however, are not such fundamental rights.

In this case, we do not find appellant's counsel's representation fell below an objectively reasonable standard. From the record, no clear venue or vicinage violation existed. Some evidence indicates venue and vicinage were indeed proper in Stanislaus County. The defendant engaged in 29 transactions involving Union Bank within a very short period of time, back and forth between Visalia, Oakland, Stockton, and Fresno, with many transactions occurring on the same day between cities. The evidence supports the inference that appellant drove through Stanislaus County with the stolen funds, thereby satisfying proper venue and vicinage under section 786 (bringing property obtained by theft into a jurisdiction). Additionally, appellant's false identification was found in Stanislaus County, further tending to indicate a connection between that county and the crimes. It is entirely possible appellant's attorney determined the venue and vicinage arguments too tenuous to present at trial. One of the roles of the attorney is to weed out weaker arguments in favor of stronger arguments, and an attorney does not have a duty to present every viable claim. (*Jones* v. *Barnes* (1983) 463 U.S. 745, 751-752 [77 L.Ed.2d 987, 993-994, 103 S.Ct. 3308].) Thus, even accepting as true appellant's declaration that he questioned jurisdiction in Stanislaus County to his counsel, appellant's counsel did not fall below an objective standard of reasonable attorney representation as would be required to find ineffective counsel under *Strickland.* Venue and vicinage were therefore validly waived by failing to raise the issues at trial.

Moreover, even assuming appellant's trial counsel's performance was below the objective standard of reasonableness, appellant has failed to demonstrate any prejudice. He does not claim that the trial in Stanislaus County on count V was in any way unfair or that if he had been tried in Tulare County on that count there is any reasonable likelihood he would not have been convicted. His failure to make that claim in light of the overwhelming evidence of guilt is understandable. Instead, at oral argument before this court appellant suggested he was prejudiced because he may have been sentenced differently if tried separately on count V in Tulare County.

The Stanislaus County court, although finding aggravating circumstances and no mitigating circumstances, sentenced appellant to the midterm of two years on count V which the court selected as the principal term because it represented the most significant loss. The court further sentenced appellant to consecutive terms of one-third of the midterm on each of counts I, III, and IV (eight months each), and imposed a one-year prior prison term enhancement under section 667.5, subdivision (b). As to count III, the court imposed

the midterm of two years, to run concurrently to the sentence on the other counts. Thus, appellant received an aggregate sentence of five years. The prosecutor had unsuccessfully urged the court to impose the upper term on at least one of the counts.

The determinate sentencing law requires that when a person is convicted of two or more felonies, even in different courts, the "principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes . . . ." (§ 1170.1, subd. (a).) Each of the felony offenses of which appellant was convicted was punishable by a prison sentence of sixteen months, two years, or three years. (See §§ 461, subd. (2), 489, subd. (b), 496, subd. (a), and 18.) Thus, as long as the court selected the midterm it did not matter which count constituted the principal term. On the other hand, if appellant had been tried separately on count V in Tulare County and that court ultimately imposed sentence, it might have selected the aggravated term as the principal term, thereby increasing appellant's overall sentence. In other words, appellant may have actually benefited from the sentence imposed in Stanislaus County.

A claim of ineffectiveness of counsel will not be sustained unless "it is reasonably probable a determination more favorable to the defendant would have resulted in the absence of counsel's failings." (*People* v. *Fosselman* (1983) 33 Cal.3d 572, 584 [189 Cal.Rptr. 855, 659 P.2d 1144].) Appellant's claim that he was prejudiced by the Stanislaus County court's having imposed sentence on count V is wholly speculative.

DISPOSITION

Judgment affirmed. The writ is denied.

Stone (W. A.), Acting P. J., and Dibiaso, J., concurred.

A petition for a rehearing was denied October 3, 1995, and appellant's petition for review by the Supreme Court was denied December 13, 1995.