Filed 12/29/15  P. v. Brooks CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C078875 |
| v. | (Super. Ct. No. 62127722) |
| JOSEPH RAY BROOKS, | |
| Defendant and Appellant. | |

A jury found defendant Joseph Ray Brooks guilty of first degree residential burglary (Pen. Code, § 459)[1] and found true that a person, not his accomplice, was present during the burglary (§ 667.5, subd. (c)(21)).  Defendant admitted two prior strike convictions.  (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d).)  The trial court denied defendant's motion to dismiss the prior strike allegations and sentenced defendant to an aggregate term of 35 years to life in state prison.

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant now contends (1) the People failed to present sufficient evidence to convict him of burglary; (2) defendant's trial counsel was ineffective in failing to object to certain evidence; and (3) the trial court abused its discretion in refusing to dismiss his prior strike convictions. Finding none of defendant's claims meritorious, we will affirm the judgment.

BACKGROUND

In January 2014, Valerie Retallack was living in a ground floor apartment in the rear of an apartment complex in Roseville. On or about January 10, 2014, Retallack saw an African American man, later identified as defendant, walking around the apartment complex "like he was looking for something." Retallack thought he might be lost. She watched him get into "a burnt orange SUV-type vehicle" and drive away.

A few days later, Retallack was home alone in the morning when her dog began to bark. She looked out of the dining room window and saw defendant, wearing a blue sweat suit with white stripes on the sleeves and pants, approximately 25 to 50 feet away near the pool and tennis courts area. Retallack was unsure of his height, but saw that he had a moustache and was bald. Retallack also saw the same burnt orange SUV parked directly in front of her apartment, license plate "MEUHIM."

Retallack watched defendant and saw that he was "looking around like he was looking for something." Unconcerned, Retallack went into her bathroom to brush her teeth. While brushing her teeth, Retallack walked out of her bathroom and saw defendant standing in the hallway of her apartment. She knew the front door and the sliding glass door to the living room were both locked, but she was not sure about the sliding glass door in the master bedroom. Retallack got her cell phone from the dining room table and called 911. When defendant saw Retallack, he went into the master bedroom, locked the bedroom door, and left through the sliding glass door.

Roseville Police Officer Jerry Wernli soon arrived at Retallack's apartment. Wernli checked the registration information for a car with the license plate "MEUHIM."

2

The car was registered to Gretchen Monique and defendant. Using that information, Wernli created a photo lineup on his computer. The photo lineup consisted of six individuals, one of whom was defendant. Retallack looked at the lineup and identified defendant as the man she saw in her apartment.

Around 10:00 a.m. that same morning, Leah Mansfield was home alone in her apartment in Citrus Heights. Mansfield's apartment is upstairs at the "very back" of the complex. Mansfield looked out her kitchen window and saw a man, later identified as defendant, standing at the door. She did not open her door; she watched defendant go down the stairs. Then she saw defendant "hopping the fence below [her] apartment," giving him access to the balcony off of her dining room. She watched defendant look to his left and his right, then put on black leather gloves. Terrified, Mansfield called the police. She also grabbed a fake, plastic gun to intimidate defendant.

Approximately 30 minutes later, police officers drove Mansfield to the intersection at Sunrise Boulevard and Antelope Road. There, she saw defendant "with multiple police officers." Mansfield told the officers she was "very confident" that defendant was the man she had seen on the balcony of her apartment.

Another police officer drove Retallack to that same intersection. Retallack sat in the patrol car while defendant got out of another patrol car and stood next to it. Retallack again identified defendant as the man she saw in her apartment. Defendant was then arrested and booked into county jail.

In Placer County Superior Court case No. 62-127722, defendant was charged with first degree residential burglary. (§§ 459, 462, subd. (a).) Retallack was identified as his victim. The People further alleged that during the commission of the burglary, a person not defendant's accomplice was in the residence (§ 667.5, subd. (c)(21)), and defendant was twice previously convicted of strike offenses (§§ 667, subds. (b)-(i), 1170.12,

3

subds. (a)-(d)).  (CT 1-3)  Defendant pleaded not guilty to the charge and denied the sentencing enhancements.[2]

At trial, defendant presented the expert testimony of Dr. Robert Shomer, a forensic psychologist, who testified about the unreliability of eyewitness identification, particularly "cross-racial identification."  Dr. Shomer explained how stress, lighting, and proximity to the perpetrator can decrease the reliability of an eyewitness identification.  He opined that in-court identifications are tainted by prior lineup identifications, physical lineups are more reliable than photographic ones, and a lineup should be administered by a neutral party, not the investigating officer.

Dr. Shomer also opined that the photo lineup shown to Retallack was particularly problematic.  He noted two of the men in the lineup were obviously older than the others and the variation in hairstyles, including the lack of hair on some of the men in the lineup, was "another factor to look at."  Dr. Shomer also said it was "unfortunate" that the photo lineup included a label at the top that said, "Sacramento Sheriff's Known Person Finder."  The lineup should be "balanced," he said, and this label could "communicate the notion that these are all bad guys, . . . people who have come to the attention of [the] Sacramento Sheriff's Department."

In addition, Dr. Shomer said displaying all six photographs at once results in a "compounding" of errors.  He said "if the witness was only able to look at one photograph at a time to test the appearance of that photograph against their memory, you get far more accurate results."

In closing argument, defense counsel argued that Retallack's identification of defendant as the man she saw in her apartment was unreliable.  He also argued that even

---

[2]  In a separate case, Sacramento County Superior Court case No. 14F00822, defendant was also charged with first degree burglary.  (§ 459)  Mansfield was identified as his victim in that case.

4

if it was defendant, there was no evidence he entered the apartment with the intent to steal anything. The jury was not persuaded and found defendant guilty as charged. They also found true the allegation that a person not defendant's accomplice was present during the burglary.

Defendant later admitted the prior strike allegations were true but moved to dismiss one or both of the prior convictions. The People opposed defendant's motion and, following a hearing, the trial court denied the motion. Additional facts relating to defendant's motion to dismiss the prior strike allegations are included in the relevant discussion portion of this opinion. The trial court sentenced defendant to an aggregate term of 35 years to life, awarded him 503 days of presentence credit, and ordered him to pay various fines and fees.

DISCUSSION

I

Defendant contends the People failed to present sufficient evidence to convict him of burglary. Specifically, he claims the evidence was insufficient to establish his intent to commit a theft when entering Retallack's apartment.

We review claims concerning the sufficiency of the evidence "in the light most favorable to [the People] and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Lewis* (1990) 50 Cal.3d 262, 277.) On appeal, we must affirm the conviction as long as a rational trier of fact could have found guilt based on the evidence and the inferences reasonably drawn therefrom. (*People v. Millwee* (1998) 18 Cal.4th 96, 132.)

To sustain a burglary conviction, we ask whether the jury could reasonably determine that the defendant possessed the intent to commit a felony at the time of entering the dwelling. (See *People v. Gbadebo-Soda* (1995) 38 Cal.App.4th 160, 166; § 459 [burglary elements include "intent to commit grand or petit larceny or any felony"].) A defendant's intent, however, is rarely susceptible of direct proof and must

5

usually be inferred from all of the facts and circumstances disclosed by the evidence. When the evidence justifies a reasonable inference of felonious intent, the verdict will not be disturbed on appeal. (*People v. Holt* (1997) 15 Cal.4th 619, 669-670; *People v. Cain* (1995) 10 Cal.4th 1, 47.)

The facts here justify the jury's inference that defendant entered Retallack's apartment with the intent to steal from her. A few days before he broke into Retallack's home, and again the morning of the break in, Retallack saw defendant wandering near her apartment building "looking for something." The jury could reasonably infer from that evidence that defendant was "casing" Retallack's apartment. Furthermore, defendant entered Retallack's apartment through a back door, did not announce his presence, and offered no explanation for being there. Then, when defendant saw Retallack coming out of the bathroom, he fled through the sliding glass door in the master bedroom. The facts thus support the jury's conclusion that defendant intended to steal from Retallack.

That there was no evidence defendant actually removed anything from Retallack's apartment does not alter this conclusion. "Burglarious intent can reasonably be inferred from an unlawful entry alone. [Citation.] Even if no crime be committed after the entry, circumstances such as flight after being hailed by an occupant of the building . . . without reasonable explanation of the entry, will warrant the conclusion by a jury that the entry was made with the intention to commit theft." (*People v. Jordan* (1962) 204 Cal.App.2d 782, 786-787; *People v. Martin* (1969) 275 Cal.App.2d 334, 339 [same]; see *People v. Jones* (1962) 211 Cal.App.2d 63, 71-72 ["Burglarious entry may be inferred from the fact that appellant unlawfully and forcibly entered the home of another"]; *People v. Fitch* (1946) 73 Cal.App.2d 825, 827 [intent to commit theft "could be inferred from the forcible and unlawful entry alone"].)

Nor is the conclusion altered because, as defendant argues, the facts might also suggest defendant actually intended to sexually assault Retallack when he broke into her apartment, not steal from her. As an initial matter, if he intended to sexually assault

Retallack, it is unlikely he would have fled when he saw her.[3]  Additionally, we must affirm the judgment if the circumstances reasonably justify the jury's finding of guilt regardless of whether we believe the circumstances might also reasonably be reconciled with a contrary finding.  (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

Accordingly, defendant's unlawful entry here warranted a conclusion that he intended to steal from Retallack.  There is sufficient evidence to support the burglary conviction.

II

Defendant next contends his trial counsel was ineffective in failing to object to certain evidence.

Defendant begins his argument by asserting that the trial court erred in admitting an unredacted copy of the photo lineup shown to Retallack, as well as testimony related to how the lineup was created.  According to defendant, because the photo lineup included a notation that it was created using a computer program called "Sacramento County Known Persons Finder," the lineup itself suggested he had a criminal past. He further claims the testimony of Officer Wernli describing how the lineup was created from a database that included arrest records and records from the Department of Motor Vehicles served only to further suggest defendant was a known criminal.  Because defendant forfeited these claims of error by failing to object to the evidence at trial (Evid. Code, § 353; *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1214), he contends trial counsel was ineffective for failing to raise the objection.

" 'In order to establish a claim of ineffective assistance of counsel, defendant bears the burden of demonstrating, first, that counsel's performance was deficient because it

---

**3**  If simply "peeping" were his goal, as defendant suggests in his reply brief, it is also unlikely he would have entered the apartment at all.  He could "peep" on Retallack from outside the apartment.

7

"fell below an objective standard of reasonableness [¶] . . . under prevailing professional norms." [Citations.] Unless a defendant establishes the contrary, we shall presume that "counsel's performance fell within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." [Citation.] If the record "sheds no light on why counsel acted or failed to act in the manner challenged," an appellate claim of ineffective assistance of counsel must be rejected "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." [Citations.] If a defendant meets the burden of establishing that counsel's performance was deficient, he or she also must show that counsel's deficiencies resulted in prejudice, that is, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [Citation.]' [Citation.]" (*People v. Lopez* (2008) 42 Cal.4th 960, 966.)

Here, we can discern a strategic reason for trial counsel's decision not to object to the unredacted photo lineup or Wernli's testimony. One of the defenses asserted by trial counsel was that defendant was not the man Retallack saw in her apartment. In support of that defense, defendant presented expert testimony regarding the unreliability of identifications, particularly those made by looking at a photo lineup. The unredacted photo lineup and Wernli's testimony explaining its creation supported defendant's theory that the lineup was flawed and, therefore, Retallack's identification of defendant was unreliable.

Defendant has not established that trial counsel's performance was deficient. Accordingly, we need not address whether defendant was prejudiced by counsel's failure to object.

### III

In addition, defendant contends the trial court abused its discretion in refusing to dismiss his prior strike convictions. Defendant's request in the trial court was made pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

8

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review." ' [Citations.] Second, a ' "decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' " ' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

A prior serious felony conviction can be dismissed only if the defendant falls "outside the . . . spirit" of the three strikes law. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) In making that decision, a court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*)

In the trial court, the People opposed defendant's request to dismiss one or both of the prior strike allegations, pointing out his extensive criminal record. Beginning in the 1970's, defendant's criminal history spanned over 40 years and resulted in 16 convictions. The People pointed out that, in addition to the prior 16 convictions, he committed a strike offense in this case and was charged with yet another strike offense in Sacramento County Superior Court for his conduct at Mansfield's home. The People pointed out that when defendant ran from Retallack's apartment, he went to break into

another woman's apartment. According to the People, despite his age and professed remorse, defendant continued to break the law.

In support of his request, defendant argued that he committed the strike offenses long ago, he had no recent parole violations, and he was nine years out of prison before committing the crime for which he was convicted here. Defendant told the trial court he was a good man; he cared about people, raised his son and stepdaughter, and was remorseful for the crime he committed. He also argued he was not a violent person, that he had "no violence in his record" despite his background and training in martial arts. Many letters were sent to the trial court on defendant's behalf, lauding his good qualities and asking for leniency.

The trial court acknowledged that defendant's strike offenses were old, but explained that the series of subsequent arrests and convictions for theft-related offenses diminished the argument that his strike convictions were remote. The trial court also said defendant served multiple prison terms and his crimes were primarily theft-related; and the trial court noted the emotional impact defendant's crime had on his victim. The trial court determined that defendant's current crime showed not only sophistication and planning, but an increase in seriousness and severity. The trial court found no justification or excuse for defendant's crime, noting that defendant had neither a drug nor an alcohol problem. The trial court also found defendant's prospects were uncertain, given that after 12 years of living crime free out of state, defendant returned to California and resumed his criminal activity.

The trial court weighed the foregoing factors against those it considered mitigating. The court noted the lack of violence in defendant's criminal history, defendant's family relationships (which were strong), his age (defendant was 61), and the fact that Retallack was not physically injured and nothing was taken from her home. On balance, the trial court found defendant was not a person who fell outside the spirit of the three strikes law.

10

Defendant's arguments on appeal are nearly the same as those he asserted in the trial court, but he also argues that a term of 12, 14, or 16 years, which he would have served without the strike allegations, would have been sufficient given the nature of his crime and his age. We do not comment on whether a shorter term would have been sufficient. Instead, we conclude the trial court's decision was not irrational or arbitrary. On the contrary, the trial court took great care to consider both sides of the argument before reaching its decision, and its decision is supported by the record. The trial court did not abuse its discretion.

DISPOSITION

The judgment is affirmed.


                                                    /S/
                                         Mauro, J.



We concur:



       /S/
Raye, P. J.



       /S/
Nicholson, J.